Charles V. RHINEHART, Plaintiff,

v.

**UNITED BROTHERHOOD OF CARPENTERS PENSION FUND, Defendant.**

No. CIV–99–728–T.

United States District Court,
W.D. Oklahoma.

May 17, 2001.

Charles W. Ellis, Lawrence & Ellis, Oklahoma City, OK, for plaintiff.

George William Velotta, II, Derryberry Quigley Solomon & Naifeh, Oklahoma

City, OK, Thomas F. Birmingham, Birmingham Morley Weatherford & Priore, Tulsa, OK, Daniel J. Hall, DeCarlo Conor & Selvo, PC, Los Angeles, CA, for defendants.

## ORDER

RALPH G. THOMPSON, District Judge.

Before the court are the parties' cross-motions for summary judgment. Because the parties' motions involve the same legal issues, both motions are addressed in this order.

In this action, plaintiff asserts claims arising under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Specifically, he claims that he is eligible for pension benefits from the United Brotherhood of Carpenters Pension Fund ("the Fund"), based on contributions made on his behalf by Carpenters Local Union No. 329 (the "Union") during his term as president of the Union. The Fund is administered under the Pension Plan for the United Brotherhood of Carpenters Pension Fund for Officers and Representatives (the "Plan"), an employee benefit plan governed by ERISA. In July, 1998 plaintiff was notified by the Fund trustees that he was not eligible for pension benefits for the years 1993 through 1996 because he did not work the minimum number of hours required for eligibility under the Plan[1]. The Fund trustees also advised that an outside audit showed that some contributions made to the Fund on his behalf were attributable to his employment with the Joint Apprenticeship and Training Committee ("JATC") of the Union, which was not a covered employer under the Plan.

Plaintiff contends that the Plan trustees' decision was arbitrary and capricious and that it should be reversed. He seeks partial summary judgment, arguing that the undisputed evidence establishes his eligibility for pension benefits and his right to an accounting by the Fund of monies received as contributions on his behalf. He also claims that the undisputed facts entitle him to restitution of the funds paid by JATC.

Defendant also seeks summary judgment, arguing that the undisputed facts establish that the decision that plaintiff is ineligible for benefits was not arbitrary or capricious and should be upheld. Defendant also argues that there is no legal basis for plaintiff's request for an accounting of the JATC contributions or to plaintiff's claim for restitution.

Summary judgment may be granted where the undisputed material facts establish that one party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material fact is one which may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, plaintiff must present more than a "mere scintilla" of evidence, the evidence must be such that "a reasonable jury could return a verdict for the non-moving party." *Id.* The facts in the record and reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party. *Simms v. State of Oklahoma*, 165 F.3d 1321, 1326 (10th Cir. 1999).

1. At that time, plaintiff had not applied for pension benefits because he had not yet reached the age of 55, which is the minimum age for retirement benefits under the Plan. Plaintiff did not reach the age of 55 until August, 2000, after this lawsuit was filed.

This court's review of the Fund trustees' decision is subject to the rules governing review of an ERISA plan decision. Accordingly, a *de novo* standard of review applies to the administrator's decision unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the benefit plan. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Kimber v. Thiokol Corp.,* 196 F.3d 1092, 1097 (10th Cir. 1999). If such discretionary authority is granted by the plan, the court must apply an arbitrary and capricious standard of review. *Kimber,* 196 F.3d at 1097. The degree of discretion conferred on the administrator is determined by the plan documents. *Firestone,* 489 U.S. at 115, 109 S.Ct. 948.

Defendant submits a copy of the Plan as Exhibit A–1 to its motion. The Plan designates the trustees as the Plan administrators and provides that they are "the sole judges of the standard proof required in any case and the application and interpretation of the Plan." Exhibit A–1, § 6.03. It further provides that the "decisions of the Trustees shall be final and binding on all parties." *Id.*

Where the plan documents grant such final decision making authority to the plan administrator, the court must apply an arbitrary and capricious standard of review. *Pitman v. Blue Cross and Blue Shield of Oklahoma,* 217 F.3d 1291, 1295 (10th Cir.2000). The language in the Plan at issue is thus sufficient to grant to the trustees the required discretionary authority warranting application of the arbitrary and capricious standard of review to their decision in this case.

Although plaintiff agrees that the court must apply the arbitrary and capricious standard of review, he suggests that the court must also take into consideration the alleged conflict of interest of the trustees in making the decision at issue. As plaintiff correctly notes, where a conflict of interest exists, it should be considered in applying the arbitrary and capricious standard, the court should apply a "sliding scale" in which the degree of deference afford the trustees' decision is reduced according to the severity of the conflict. See, e.g., *Pitman,* 217 F.3d at 1295. To determine if a conflict exists, the court must decide whether 1) the plan is self-funded; 2) the company funding the plan appointed and compensated the plan administrator; 3) the plan administrator's performance reviews or level of compensation were linked to the denial of the benefits; and 4) the provision of benefits had a significant economic impact on the company administering the plan. *Kimber,* 196 F.3d at 1097–98.

Plaintiff offers no argument with respect to any of these factors, and presents no evidence to support his contention that a conflict of interest existed. In fact, the only evidence in the record is submitted by defendant. *See* declaration of Marian Henry, defendant's Exhibit A to brief in support of motion for summary judgment. According to Henry, the Plan is funded by contributions from approximately 260 employers, the Plan trustees receive no compensation from the Plan, and the employers are not affected by the provision of benefits to employees.

Based on the only evidence before the court, there is nothing to support a claim of conflict of interest sufficient to affect the application of the arbitrary and capricious standard of review in this case. Even if the court were to determine that such conflict exists, however, the same standard would apply, and the court would take into consideration the conflict in determining the degree of deference to be

afforded to the Plan trustees' decision. *Pitman,* 217 F.3d at 1295.

 Because the arbitrary and capricious standard applies, this court's review of the decision is confined to the record. *Kimber,* 196 F.3d at 1098, *Sandoval v. Aetna Life & Casualty Ins. Co.,* 967 F.2d 377, 380–81 (10th Cir.1992). Thus, the court may consider only the evidence considered by the Plan trustees when making the decision on plaintiff's claim. Additional evidence may not be properly considered, as "the participant is not entitled to a second chance to prove his case." *Sandoval,* 967 F.2d at 381.

In this case, defendant asks the court to exclude from its consideration of the parties' motions arguments which plaintiff did not submit to the Plan prior to its initial decision. Plaintiff also did not pursue an internal appeal of the initial decision, although he was advised of his right to pursue such appeal.[2] Therefore, the evidence at issue was not before the Plan trustees and is not a part of the record to be reviewed by this court. *Sandoval,* 967 F.2d at 381.

 The record properly before the court consists of the Plan documents, the outside audit report, and the materials included in the audit. All facts included in defendant's statement of material undisputed facts in its motion for summary judgment are deemed admitted for purposes of this motion because, in his response brief, plaintiff failed to dispute any of these facts. LCvR 56.

 The parties agree that plaintiff served as president of the Union from 1991 through 1998 and received a salary from the Union. He was also employed during this period by JATC as its coordinator, and JATC paid him a salary for that work. The Union is an employer covered by the Plan and made contributions to the Fund on behalf of its officers, including plaintiff. JATC did not make contributions for its officers during the relevant time period of 1993–96 because it was not a covered employer under the Plan, and its officers and representatives were not eligible for coverage under the Plan.

Sometime in 1993, JATC began paying money to the Union for contributions to the Fund on behalf of plaintiff. JATC did not make contributions directly to the Fund; however, the monies it paid to the Union were, in turn, contributed by the Union to the Fund as contributions for plaintiff as a Union officer.

In September, 1997 the trustees of the Plan adopted a Policy and Procedure for Delinquent Employer Accounts which called for audits of all covered employers under the Plan. The audit was conducted by Thomas Havey, LLP, Certified Public Accountants and Consultants ("Havey") Havey's audit covered approximately 260 local unions and councils of the Carpenters union throughout the United States. The Havey audit was submitted to the Plan trustees.

The Havey audit reported that the hours worked by plaintiff as an officer of the Union from 1993–96 were less than 1,000 per year, the minimum required for Plan eligibility. It also reported that some of the funds contributed on plaintiff's behalf by the Union were actually funds submitted to the Union by JATC and were based

---

**2.** Plaintiff's response brief argues that, notwithstanding his failure to pursue his appeal rights, the statute of limitations does not bar his claim. This argument is not relevant, as defendant does not claim that plaintiff's action is barred. Rather, defendant notes that, because plaintiff did not appeal, he did not submit any additional evidence for consideration of his claim. Otherwise, plaintiff's failure to exhaust administrative remedies has no impact on the court's decision.

on salary paid to plaintiff by JATC. The trustees determined that the total salaried hours of work reported for plaintiff were partially based on his employment with JATC and that the total hours attributable to his work as Union president were less than the 1,000 hours per year required for Fund eligibility. As a result, the trustees concluded that plaintiff was not eligible for coverage for this time period. The trustees notified plaintiff of this decision by letter dated July 30, 1998.

The trustees' interpretation of the Plan provisions regarding eligibility for coverage is the critical issue raised by the parties. Only if that interpretation is arbitrary or capricious, however, is their decision subject to reversal by this court. The court concludes that the decision is neither arbitrary nor capricious, as it is based on a reasonable and logical interpretation of the Plan and the applicable ERISA provisions.

The Plan provides that the Fund is available only to "full-time" officers and representatives employed by local unions. Plan § 1.07. The Plan defines "full-time" as "employment in a position which requires at least 1,000 hours per year and for which a salary is paid to a Participant by a Local Union, Council or the United Brotherhood." Plan § 1.08. The Plan further provides that "hours of service" include those "for which Participant is paid or entitled to payment" and that such hours are computed according to 29 C.F.R. 2530.200b. Plan, § 1.22. The cited regulations define an hour of service as "each hour for which an employee is paid, or entitled to payment, for the performance of duties for the employer." 29 C.F.R. 2530.200B–2(a)(1).

The Plan trustees determined that plaintiff was ineligible for benefits for the time period 1993–96 because he did not satisfy the Plan definition of full time employment as an officer or representative in that the records reflected he was not employed "in a position which requires at least 1,000 hours per year *and* for which a salary is paid to a Participant by a Local Union, Council or the United Brotherhood." (Emphasis added). Plaintiff offers no evidence to dispute the fact, shown by the evidence, that the Union did not pay him a salary for 1,000 hours per year during the relevant time period. Instead, plaintiff admits that the JATC, which is not a covered employer under the Plan, made payments to the Union representing salary which plaintiff earned in his JATC employment; the Union, in turn, paid the contributions on behalf of plaintiff based on both his Union salary and the JATC contributions. Relying on the Havey audit which established that plaintiff was not compensated by the Union for at least 1,000 hours per year of work, the Plan Trustees determined that plaintiff did not meet the eligibility requirements of the Plan.

Plaintiff contends that he is eligible for the 1,000 per hour minimum requirement for Plan eligibility because, as Union president, he was "required" to devote significant hours to carry out his duties; he discusses at length the many activities in which he engaged in order to fulfill his duties as president. That evidence was not, however, submitted to the trustees and was therefore not considered in their decision. As a result, it is not part of the record to be reviewed by this court. *Sandoval*, 967 F.2d at 381.

Even if plaintiff's evidence of the amount of time he spent in fulfilling his duties was properly a part of the record to be reviewed, however, it does not render the trustees' interpretation of the Plan unreasonable. Contrary to plaintiff's argument, the trustees did not interpret the Plan's 1,000 hour per year minimum as based only on "required" work; rather, they determined that it is based on required work for which a salary was paid by

the covered employer. The Plan covers only those employed in a position "which requires at least 1,000 hours per year *and* for which a salary is paid to a Participant by a Local Union, Council or the United Brotherhood." Plan § 1.07.(Emphasis added). Plaintiff admits that the hours of required work for which he was paid a salary by the Union do not meet this minimum requirement. If plaintiff's argument is construed as challenging the interpretation of this provision as requiring 1,000 hour of salaried work paid for by the Union, that argument does not support a finding that the interpretation is arbitrary or capricious. Plaintiff offers no argument that the trustees were irrational in interpreting this provision to require that the minimum hours be salaried hours based on the salary paid by the Union covered under the Plan. In fact, that interpretation is consistent with other Plan provisions defining hours of service as those for which a Plan participant is paid or entitled to payment and defining compensation as based on "salary paid to a Participant by" a covered employer. Plan §§ 1.22, 1.13.

Even if plaintiff had submitted to the trustees his argument that he was required to work more than the minimum number of hours to fulfill his duties, the Plan requires that the salary represented by those hours be paid by the Union or other covered employer. Plan §§ 1.07, 1.08. It is not disputed that JATC is not a covered employer, and plaintiff admits that part of the monies contributed to the Fund on his behalf were actually funds of JATC representing work he had performed for JATC. Plaintiff admits that JATC paid to the Union a portion of the funds that the Union then represented to the Fund as attributable to plaintiff's Union salary.

The Havey audit establishes that the portion of the funds which were attributable to plaintiff's compensated hours as president of the Union were substantially less than the wages reported to the Funds: 48% in 1993, 41% in 1994, 47% in 1995 and 24% in 1996. The balance reported was attributable to his JATC compensation. Without that amount, he was not compensated for 1,000 hours per year. Accordingly, the Plan trustees determined that he was not eligible for benefits based on the years in question.

■■■■ The record reflects that plaintiff has not shown that the decision was arbitrary or capricious. A decision is arbitrary and capricious if it is "not grounded on *any* reasonable basis." *Kimber,* 196 F.3d at 1098. Furthermore, the decision "need not be the only logical one nor even the best one. It need only be sufficiently supported by facts with [the Plan Trustees'] knowledge to counter a claim that it was arbitrary or capricious," and the court "need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness-even if on the low end." *Kimber,* 196 F.3d at 1098.

The Plan trustees' determination that plaintiff did not meet the minimum requirements for eligibility in the Fund for the years 1993–96 is based on a reasonable interpretation of the Plan and its eligibility requirements. The trustees' interpretation is supported by the definitions in the Plan, and that interpretation is neither arbitrary nor capricious. Even if the court concluded that a conflict of interest existed as defined in *Kimber,* the plain language of the Plan supports the conclusion that the decision was reasonable.

■■■ Plaintiff's arguments opposing the motion for summary judgment do not alter that conclusion. He argues that the Fund trustees "deprived [plaintiff] of his pension service credits without giving him an opportunity for a hearing and the decision was based on a blatant misinterpretation of the terms of the plan documents which were known to the trustees at the time

they make their decision." Plaintiff's response brief, p. 5. Plaintiff's claim that the trustees misinterpreted the terms of the plan is not supported by any persuasive argument; as noted above, the interpretation is reasonable. Plaintiffs' contention that he had no opportunity for a hearing is similarly unpersuasive. The Plan does not require a hearing before a decision is made concerning eligibility for benefits; plaintiff cites no portion of the Plan so providing and does not offer any authority to support this contention. The record reflects that, in July of 1998, plaintiff was sent written notification of the trustees' determination that he was ineligible for benefits under the Plan. Defendant's Exhibit A–5. The record reflects that, in April of 1999, plaintiff's attorney corresponded with the trustees concerning their decision and, in a May 4, 1999 response, the trustees inquired if plaintiff intended to seek an appeal of the decision [3]. Defendant's Exhibit C–1. Plaintiff did not pursue an internal appeal, but filed this lawsuit.

■ Plaintiff also argues that it was improper for the trustees to determine eligibility under the Plan before a claim for benefits had been made. However, that argument does not support his claim that the decision was arbitrary or capricious. The trustees are charged with the authority to determine eligibility under the Plan documents, and there is no requirement that such determination must be made only after a claim is filed. Plaintiff offers no evidence or authority to support the contention that the trustees' determination of eligibility prior to the filing of a claim was arbitrary, capricious, or otherwise improper.

The court concludes that defendant is entitled to summary judgment on plaintiff's request for a declaratory judgment that he is entitled to pension benefits for the years in question. To that extent, defendant's motion for summary judgment is GRANTED. To the extent that plaintiff's motion for summary judgment seeks a ruling that the trustees' decision is arbitrary or capricious, plaintiff's motion is DENIED.

■ Plaintiff also asserts a claim, which he characterizes as seeking recision and restitution, to recover that portion of the contribution paid by JATC. He argues that, because JATC has not demanded its return, he should be entitled to recover these funds. Defendant argues that, as a matter of law, there is no legal basis for restitution of the funds to plaintiff under the undisputed facts.

The parties agree that JATC never sent contributions directly to the fund on plaintiff's behalf, instead, it paid these amounts to the Union which, in turn, made equivalent contributions to the Fund. Because the Fund and JATC had no contractual agreement and there were no funds paid to the Fund by JATC, there is no contract to rescind. ERISA contains a provision authorizing an employer to recover contributions made in error to a fund. However, that provision contains time limits for seeking the return of such funds. *See* 29 U.S.C. § 1103(c)(2)(A)(i) and (ii), setting limits of six months for single employer plans and one year for multi-employer plans. The record contains no evidence that the Union sought return of the funds attributable to amounts paid to it by JATC at any time. In fact, plaintiff represents

---

**3.** Although the record indicates that the July 1998 notification did not contain a statement of his appeal rights, plaintiff was not prejudiced as a result because, in the 1999 correspondence with plaintiff's attorney, the trustees agreed to waive the deadline for pursuing an appeal. Defendant's Exhibit C–1. Therefore, plaintiff could have pursued same at that time. Instead, he elected to pursue this lawsuit.

that JATC does not intend to seek return of the funds.

Notwithstanding JATC's lack of action to seek return of the funds, plaintiff offers no authority to support his claim that the funds be returned to him personally. He does not contend that he personally paid any portion of these funds, and there is no evidence that he did so.

Plaintiff refers to 29 U.S.C. § 1132(a)(3)(B), the ERISA provision which allows a Plan participant to bring an action to redress violations of ERISA's provisions, to enforce such provisions, or to seek equitable relief regarding same. However, plaintiff does not point to any ERISA provision which he contends was violated and does not seek enforcement of same. He offers no argument or authority justifying his claim to recover the funds paid by JATC to the Union and, in turn, by the Union to the Plan [4].

The court agrees with defendant that plaintiff's claim for rescission and restitution has no basis in law. Accordingly, the court concludes that defendant is entitled to judgment on that claim.

In accordance with the foregoing, the court concludes that defendant's motion for summary judgment should be GRANTED in all respects. Plaintiff's motion for partial summary judgment is DENIED in all respects. Judgment shall enter in favor of defendant and against plaintiff on all claims asserted by plaintiff.

---

4. Defendant also argues that plaintiff is not entitled to equitable relief because the "unclean hands" doctrine should bar any equitable recovery. Defendant's argument is based on the contention that plaintiff caused JATC to pay to the Union funds to be represented as the Union's contribution to the Plan on behalf of plaintiff and that the arrangement was wrongful and misrepresented plaintiff's employment status to the Plan. Because the court has concluded that plaintiff has not stated a valid legal basis for his claim, that argument need not be addressed.